IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HLV, LLC, et al.,

      Plaintiffs,

v.                           1:13cv1366PLM
                           Hon. Paul L. Maloney

VAN BUREN COUNTY, et al.,

      Defendants.

_____/

**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO FILE
THEIR SUPPLEMENT IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS
FOR THE COURT TO JUDICIALLY NOTICE NEW FACTS**

In support of their Motion for Leave to File Their Supplement in Opposition to Defendants'

Motions to Dismiss, pursuant to Fed. R. Civ. P. Rule 7 (b)(1) and Fed. R. Evid. Rule 201(b),

Plaintiffs HLV, LLC, Landworthy Container, LLC and Robert Baker state:

### Procedural Background And Introduction

On June 20, 2014 Plaintiffs filed their brief in opposition to Defendants' second round of

motions to dismiss.  (Doc. 67.)  On May 11, 2015, the Court heard oral argument on some of

Defendants' motions to dismiss.  (Doc. 83.)  The Court is scheduled to hear oral argument on the

remaining Defendants' motions to dismiss on June 29, 2015.  (Doc. 85.)  The Court has not ruled

on any of the Defendants' various motions to dismiss.

In their response brief (Doc. 67) and during the May 11, 2015 hearing, Plaintiffs, in

opposition to Defendant Bedford's motion to dismiss, argued that Defendant Bedford waived his

immunity defense by filing another, separate civil suit in State Court regarding the same facts and

circumstances arising out of this case.[1]  On December 17, 2014, Defendant Bedford retaliated against Plaintiffs by filing a civil suit against Plaintiffs' counsel alleging that the Complaint that Plaintiffs filed in this case has, among other things, "created the suspicion that Mr. Bedford is corrupt []."  *See* Ps' Ex. 1 (Defendant Bedford's Complaint filed with the 17th Circuit Court of Kent County, Michigan.)  On March 27, 2015, the case was closed after Plaintiffs won their motion for summary disposition.

On May 13, 2015, two days after this Court heard oral argument on the first half of Defendants' motions to dismiss, Defendant Bedford and Defendant Stewart appealed the trial court's ruling in their case against Plaintiffs' counsel.

On June 3, 2015, Plaintiffs' counsel in this case contacted Defense counsel by email to seek concurrence in this motion.  Attorneys Michael Bogren, Colleen Burke and Robert Callahan who represent Defendants Van Buren County, the Village of Paw Paw, Page & Stewart, Paul Hamre, Peggy Grote, Gary Stewart, Kelly Page and Michael McKay, respectively, responded and either do oppose this motion, or cannot agree to concur.

## Argument

I.   The Court May Take Judicial Notice Of A Fact Not Subject To Reasonable Dispute.

After Plaintiffs' counsel (defendants in the underlying state case) won their motion for summary disposition on March 27, 2015, and after Defendant Bedford and Defendant Stewart lost

---

[1] Although Defendants' motions to dismiss were filed under Rule 12 and would ordinarily be limited to the pleadings, there is mixed authority as to whether immunity is a threshold issue. Thus, this Court has the discretion to engage in fact finding with regard to a claim of immunity. *See Nair v. Oakland County Comm. Mental Health Auth.,* 443 F.3d 469, 476 (6th Cir. 2006).  *See also In Re Hechinger inv. Co. of Del., Inc*., 335 F.3d 243, 250 (3d Cir. 2003); *Strawser v. Atkins,* 290 F.3d 720, 730 (4th Cir. 2002); *Gordon v. City of Kansas City, MO.,* 241 F.3d 997, 1005 n. 7 (8th Cir. 2001); *United States ex rel. long v. SCS Bus. & Tech. Inst., Inc*., 173 F.3d 890, 898 (D.C. Cir. 1999); *Parella v. Ret. Bd. of the R.I. Employee Ret. Sys.,* 173 F.3d 46, 53-57 (1st Cir. 1999).

their subsequent motion for reconsideration, Defendant Bedford and Defendant Stewart appealed the trial court's ruling.

Given that this fact is highly relevant to the issue of whether Defendant Bedford waived his immunity, Plaintiffs request that the Court take judicial notice of the fact that: (1) Defendants Bedford and Stewart's lawsuit against Plaintiffs' counsel was filed on December 17, 2014; (2) the case was disposed of on March 27, 2015 when Plaintiffs' counsel won their motion for summary disposition; and, (3) Defendants Bedford and Stewart lost their motion for reconsideration and subsequently filed their claim of appeal on May 13, 2015. Attached to this Brief as Ps' Ex. 2 and Ex. 3 (Supplement in Opposition to Defendants' Motion to Dismiss and Notice of Facts to be Judicially Noticed by the Court and Defendant Bedford's Claim of Appeal).

The Federal Rules of Evidence Rule 201(b) provides that "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it ... can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). This standard even applies to appellate courts taking judicial notice of facts supported by documents not included in the record on appeal. *See* Fed. R. Evid. 201(f) advisory committee's note ("[J]udicial notice may be taken at any stage of the proceedings, whether in the trial court or on appeal."); *United States v. Alexander*, 543 F.3d 819, 824 (6th Cir. 2008). Judicial notice is only appropriate if "the matter [is] beyond reasonable controversy.... The rule proceeds upon the theory that ... dispensing with traditional methods of proof [should only occur] in clear cases." Fed. R. Evid. 201(b) advisory committee's note; *see also United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) ("In order for a fact to be judicially noticed under Rule 201(b), indisputability is a prerequisite.").

3

The facts that Plaintiffs request this Court take judicial notice of are not subject to reasonable dispute. The facts are the date that Defendant Bedford's complaint was filed and the date he appealed the trial court's ruling. Further, both facts are within the public forum and readily available for verification purposes.

Plaintiffs respectfully request that this Court take judicial notice of the fact that Defendant Bedford and Defendant Stewart filed their complaint against Plaintiffs' counsel on December 17, 2014, that Plaintiffs' counsel won their motion for summary disposition on March 27, 2015 and Defendants Bedford and Stewart lost their motion for reconsideration and subsequently filed their claim of appeal on May 13, 2015.

II.    <u>Defendant Bedford Waived Immunity When He Filed His Complaint Against Plaintiffs' Counsel And When He Appealed The Trial Court's Decision.</u>

Defendant Bedford waived immunity by filing his defamation lawsuit against Plaintiffs' attorneys.

A.    *Immunity Can Be Waived By A Party's Subsequent Litigation Conduct Even If It Was Preserved In The Party's Answer.*

The United States Supreme Court defined waiver as the intentional relinquishment of a known right. *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023 (U.S. 1938). And, according to the Sixth Circuit, immunity can be waived. Specifically, in *Nair v. Oakland County Comm. Mental Health Auth.,* the Court held "that sovereign immunity may be waived" and that it can be waived by the party's "subsequent litigation conduct." *Nair v. Oakland County Comm. Mental Health Auth.*, 443 F.3d 469, 476 (6th Cir. 2006). The Sixth Circuit further held in *Summe v. Kenton County Clerk's Office* that qualified immunity, even when pled as an affirmative defense in a party's answer, can be waived by the party's subsequent litigation conduct. *Summe v. Kenton County Clerk's Office*, 604 F.3d 257, 269 (6th Cir. 2010).

1.      Policy Behind Prosecutorial Immunity.

Absolute immunity protects prosecutors from "any judicial scrutiny of the motive for and reasonableness of official action." *Robison v. Via*, 821 F.2d 913, 918 (2nd Cir. 1987).  However, it does not extend to the prosecutor's investigative activities independent of the litigation, because those actions are not integral to the judicial process itself.  *Id.  see also Powers v. Coe*, 728 F.2d 97, 103 (2d Cir. 1984); *Taylor v. Kavanagh*, 640 F.2d 450, 452 (2d Cir. 1981); *Lee v. Willins*, 617 F.2d 320, 322 (2d Cir.) *cert. denied*, 449 U.S. 861, 101 S.Ct. 165, 66 L.Ed.2d 78 (1980).

Qualified immunity, on the other hand, shields prosecutors "from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Robison v. Via*, 821 F.2d 913 (2nd Cir. 1987) *quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818; 102 S.Ct. 2727, 2738 (1982).

In this case, Defendant Bedford waived his defense of immunity by his subsequent litigation conduct in this case.  For instance, rather than utilizing immunity as the shield that it is intended to be, Defendant Bedford knowingly relinquished that protection and instead chose to file a civil lawsuit in the 17th Circuit Court of Kent County asking another court to rule on the exact same facts and circumstances at issue in this case.  Namely, Defendant Bedford asks the 17th Circuit Court to vindicate him by agreeing that Plaintiffs' counsel defamed Defendant Bedford. When the 17th Circuit Court disagreed with Defendant Bedford's analysis, he appealed, which functions as another example of his subsequent litigation conduct waiving his immunity defense.

**Conclusion**

For the foregoing reason, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion and enter an order allowing Plaintiffs to file their supplement in opposition to Defendants' motions to dismiss.

5

Dated:  June 4, 2015

_____

*Counsel for Plaintiffs*
Derek S. Witte (P68329)
Jordan C. Hoyer (P75659)
TALCOTT FRANKLIN P.C.
Trust Building
40 Pearl Street NW, Suite 922
Grand Rapids, Michigan 49503
(616) 350-9924
derek@talcottfranklin.com

# Exhibit 1

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF KENT

_____

MICHAEL J. BEDFORD, an individual,

               Plaintiff,

v

DEREK S. WITTE, an individual,
JORDAN C. HOYER, an individual, and
THE LAW OFFICES OF JORDAN C.
HOYER, PLLC, a Michigan professional
limited liability company,

               Defendants.

Case No: 14 - 11752 - CZ

Hon. MARK A. TRUSOCK
(P-38156)

**COMPLAINT**

_____

Lee T. Silver (P-36905)
SILVER & VAN ESSEN, P.C.
Attorneys for Plaintiff
300 Ottawa Avenue N.W. – Suite 620
Grand Rapids, MI  49503
(616) 988-5600

_____

Plaintiff, Michael J. Bedford (hereinafter "Bedford"), by his attorneys, Silver & Van Essen, P.C., states the following for his complaint against the Defendants:

**PARTIES AND JURISDICTION**

1.      Bedford is an adult individual who resides in Paw Paw, Michigan.

2.      The Defendant, Derek S. Witte (hereinafter "Witte") is an adult individual who resides in Kent County, Michigan and/or conducts business in Kent County, Michigan.

3.     The Defendant, Jordan C. Hoyer (hereinafter "Hoyer") is an adult individual who resides in Kent County, Michigan and/or conducts business in Kent County, Michigan.

4.     The Law Offices of Jordan C. Hoyer, PLLC is a Michigan professional limited liability company with its principal place of business in Kent County, Michigan.

5.     Venue is proper in this Court because the claims alleged herein pertain to activity that occurred in Kent County and the Defendants reside and/or conduct business in Kent County.

6.     This Court has jurisdiction over this matter for the reason that the amount in controversy exceeds $25,000, independent of costs and attorney fees.

**COUNT I**

**(DEFAMATION)**

**A. BEDFORD'S GOOD REPUTATION, CHARACTER, AND ACCOMPLISHMENTS**

7.     Bedford is a career public servant.

8.     Following his graduation from high school, Bedford joined the U.S. Army and served on active duty until he was honorably discharged in 1985.

9.     Following his graduation from college in 1990, Bedford went to law school at the Detroit College of Law at Michigan State University where he graduated with a J.D. degree in 1993.

10.     In 1994, Bedford became an Assistant Prosecutor of Van Buren County.

2

11.    Bedford served as a dedicated, hard-working, and ethical Assistant Prosecuting Attorney for Van Buren County from 1994 to 2011.

12.    During his 17 years as an Assistant Prosecuting Attorney, Bedford distinguished himself as a skilled prosecutor who developed a reputation for being prepared, honest, diligent, professional, and effective in prosecuting violations of criminal law occurring in Van Buren County on behalf of the People of the State of Michigan.

13.    Evidence of Bedford distinguishing himself as an Assistant Prosecuting Attorney includes, but is not limited to, the following:

    A.    Bedford successfully prosecuted a number of serious felony cases, including homicides, sexual assaults, drug trafficking, and domestic violence.

    B.    Bedford maintained a high conviction rate in all major felony cases.

    C.    Bedford received the prosecution service award in recognition of his professional service on behalf of the People of Michigan as a public prosecutor in 2000, 2005, and 2010.

    D.    Bedford served as Special Prosecutor by appointment of the Michigan Attorney General's Office in sensitive and high profile cases in Allegan, Cass, St. Joseph, and Kalamazoo counties.

    E.    Bedford developed an extensive program to fund training for law enforcement officers and prosecutors at no expense to the taxpayers by using forfeited funds sized from drug dealers.

F.      Bedford achieved success in all Van Buren County courts and earned the respect of all judges in District, Circuit, and Probate Court, as well as successfully arguing before the Michigan Supreme Court.

14.     As a result of Bedford's well-earned reputation and success as an Assistant Prosecuting Attorney, Bedford ran for the office of Van Buren County Prosecutor in 2012 against an incumbent who had held the office for 30 years.

15.     Bedford received over 70% of the vote to win the election over the incumbent.

16.     Bedford's landslide victory over the incumbent reflected the excellent reputation and image that Bedford had in Van Buren County.

17.     From January, 2013 to date, Bedford has served the public as the Van Buren County Prosecutor.

## B. <u>SUMMARY OF THE CASE</u>

18.     During his career as a public servant, Bedford's character and reputation were impeccable and beyond reproach - - until the Defendants targeted Bedford and published and disseminated malicious, reckless and outrageous falsehoods about him, including, but not limited to, falsely asserting that Bedford has accepted bribes, peddled influence, is "owned" by a local attorney in Van Buren County, has committed the crimes of mail fraud and wire fraud, has engaged in a long-term pattern of racketeering activity, and is part of a crime organization.

4

19.    The Defendants' statements were gratuitously included in a lawsuit they filed in federal court for no purpose other than to embarrass, humiliate, and harm Bedford as the statements are not relevant, material or pertinent to the issues to be tried in the federal lawsuit.

20.    The Defendants', presumably because of a desire for self-promotion and publicity, decided to pursue widespread media coverage for their salacious and scandalous allegations that Bedford had accepted bribes, obstructed justice, engaged in criminal activity, and was involved in a crime organization.   This media coverage included Defendant, Witte giving an interview to WWMT Newschannel 3, an affiliate of CBS News.  In the interview, which Witte knew would be broadcast to a wide television audience, Witte made a number of false, but extremely serious statements regarding Bedford that constitute defamation per se, including but not limited to stating that he **"can say with certainty"** that Bedford and others have committed the crimes of bribery, obstruction of justice, mail fraud, and wire fraud; stating that Bedford and others are **"absolutely"** part of a crime organization; stating that the crime organization that Bedford and others are involved in is far more serious than people realize; and stating that Bedford and others have broken the law in far more ways than are currently known.

21.    Astonishingly, the Defendants brazenly repeated their false allegations about Bedford by posting a copy of the Federal Lawsuit they prepared on the website maintained by the Law Offices of Jordan C. Hoyer, thereby making the false statements about Bedford accessible to the general public where they were available for anyone to see.

5

22.     The Defendants' statements accusing Bedford of accepting bribes, peddling influence, obstructing justice, committing the crimes of mail fraud and wire fraud, being part of a crime organization, and being "owned" by a local attorney are false and defamatory, and utter fabrications that the Defendants maliciously published with knowledge that they were false or with reckless disregard for their truth or falsity.

23.     Bedford has never accepted bribes, peddled influence, obstructed justice, engaged in mail fraud or wire fraud, been part of a crime organization or been "owned" by anyone.

24.     Although Bedford has provided Defendants with a written, detailed explanation of the falsity of Defendants statements and made at least two separate demands for a retraction, the Defendants have refused to issue a retraction.

25.     The Defendants' defamatory falsehoods have sullied the reputation of an excellent prosecutor and public servant whose integrity and character were beyond repute. As Chief Justice Warren aptly expressed it over 50 years ago: "Freedom of the press under the First Amendment does not include an absolute license to destroy lives or careers." The Defendants have intentionally defamed and damaged Bedford, presumably in order to create a name for themselves, generate widespread publicity for their practice, and for their own financial gain. This is unconscionable, and the Defendants should be held accountable.

26.     Bedford brings this action for the purpose of at least partially preserving and restoring his good name and reputation, as well as recovering the significant damages that he has suffered.

## C. **THE DEFENDANTS**

27.     Witte and Hoyer are lawyers who are husband and wife.

28.     Hoyer is the owner and agent of the Law Offices of Jordan C. Hoyer, PLLC.

29.     Witte is also an agent of the Law Offices of Jordan C. Hoyer, PLLC as he entered into an of counsel relationship with the Law Offices of Jordan C. Hoyer, PLLC.

30.     As such, the Law Offices of Jordan C. Hoyer is vicariously liable for the acts of Witte and Hoyer.

## D. **THE DEFENDANTS' DEFAMATORY STATEMENTS ABOUT BEDFORD**

## 1. **THE LAWSUIT**

31.     On or about December 31, 2013, the Defendants filed a federal lawsuit in the United States District Court for the Western District of Michigan (Case No. 1:13-cv-01366-PLM) against nine different Defendants, including Bedford (hereinafter the "Lawsuit").

32.     A copy of the Lawsuit it attached as Exhibit 1.

33.     The Lawsuit contains a number of false and defamatory statements about Bedford that were made by the Defendants with malice, including but not limited to the following:

> A.     Bedford has "purposely misused [his] government station for pecuniary gain and revenge." (See Exhibit 1 at ¶2).
>
> B.     Attorney Kelly Page ("Page") has "provided items of value" to Bedford and otherwise bribed Bedford in order to influence his decisions as a Prosecutor.  (See Exhibit 1 at ¶'s 241, 276, 280).

7

C.     Attorney Gary Stewart ("Stewart") has "provided items of value" to Bedford and otherwise bribed Bedford in order to influence his decisions as a Prosecutor.  (See Exhibit 1 at ¶'s 241, 276, 280).

D.     Bedford conspired with "Page and Stewart to create a mutually beneficial business relationship whereby they 'scratched each other's backs' and exchanged things of value for influence." (See Exhibit 1 at ¶287).

E.     Bedford accepted these bribes and, in exchange, allowed Page and Stewart to influence his decisions to charge, or not charge, arrestees and potential criminal defendants." (See Exhibit 1 at ¶'s 244, 290).

F.     "Bedford has been engaged in a quid-pro-quo relationship with Page for some time." (See Exhibit 1 at ¶286; 328).

G.     Bedford used his position "to peddle influence, trade favors, and harm litigants in the civil and criminal courts of Van Buren County." (See Exhibit 1 at ¶324).

H.     "According to another confidential informant, it is well known in Van Buren County that Defendant Page 'owns' Defendant Bedford." (See Exhibit 1 at ¶326).

I.     Bedford has been "violating the law, peddling influence, and harming Van Buren County citizens." (See Exhibit 1 at ¶329).

J.     Page has improper influence over Bedford.  (See Exhibit 1 at ¶262).

K.     Stewart has improper influence over Bedford.  (See Exhibit 1 at ¶262).

L.     Bedford has "inappropriate relationships within the judicial system." (See Exhibit 1 at ¶207).

M.     Bedford and Page "had a business relationship through which they, directly and indirectly, exchanged cash payments." (See Exhibit 1, ¶152).

N.     "Page and Bedford frequently go hunting at Defendant Page's Illinois River property.  Defendant Page pays for these trips." (See Exhibit 1, ¶163).

8

O.   "Page and Bedford have hunted in Canada together with Page presumably paying for the same." (See Exhibit 1, ¶164).

P.   "There are other instances where Bedford has taken lodging, trips, or other gifts from Page or at his expense." (See Exhibit 1, at ¶165).

Q.   Page "contributed cash" to Bedford's election campaign. (See Exhibit 1 at ¶242).

R.   "As a result of Page's bribery of Bedford and Bedford's acceptance of those bribes, Page - - on his own and through his on-and-off law partner [Stewart] - - caused Prosecutor Bedford to charge Plaintiff Robert Baker and attorney Donovan Visser for trespassing, despite there being no probable cause for such charges." (See Exhibit 1, at ¶245; See also ¶'s 142, 173, 331, 339, 356 and 356).

S.   Bedford is a puppet for Page and Stewart as Bedford "initiated criminal proceedings against Donovan Visser and [Robert] Baker because Page and/or Stewart told him to do so." (See Exhibit 1, at ¶338).

T.   Bedford has denied communicating with Page and Stewart on April 9, 2013 regarding bringing criminal charges against Donovan Visser and Robert Baker in order "to cover up their involvement and obstruct justice." (See Exhibit 1, at ¶176;  See also ¶264).

U.   "Bedford knowingly and willingly obstructed justice by filing a complaint with the Attorney Grievance Commission." (See Exhibit 1, at ¶289;  See also ¶263).

V.   "Bedford committed wire fraud." (See Exhibit 1, at ¶260; 270).

W.   Bedford committed mail fraud. (See Exhibit 1, at ¶'s 262-265; 270).

X.   Bedford has "engaged in a long-term pattern of racketeering activity, which has benefitted the criminal RICO enterprise and harmed the citizens of Van Buren County and Michigan." (See Exhibit 1, ¶215).

(The foregoing are hereinafter collectively referred to as the "Defamatory Statements in the Lawsuit").

34.   The Lawsuit was prepared by the Defendants.

9

35.     The Lawsuit was signed by the Defendants.

36.     The Lawsuit was filed by the Defendants.

37.     By filing the Lawsuit with the Court, the Defendants have made the defamatory statements part of a permanent public record that is available for anyone to see.

38.     Each of the Defamatory Statements in the Lawsuit are false.

39.     The Lawsuit is primarily designed to seek redress for what transpired in a civil action that was a collection case that was pending in Van Buren County Circuit Court before Judge Paul Hamre (Case No. 11-61-588-CH) (hereinafter the "Underlying Collection Case").

40.     The Defamatory Statements were gratuitously added to the Lawsuit for no legitimate purpose as many, if not most, of the Defamatory Statements were not relevant, material, or pertinent to the issues to be tried in the Lawsuit for many reasons, including but not limited to, the following: (1) Bedford had no involvement whatsoever in the Underlying Collection Case; (2) To the extent the Lawsuit seeks redress for the criminal misdemeanor prosecution of Robert Baker and Donovan Visser, the Defamatory Statements were not relevant, material, or pertinent to the issues to be tried in the Lawsuit because the criminal misdemeanor charge against Robert Baker was dropped well before trial (in fact, two weeks after his arraignment) and Donovan Visser is not a party to the Lawsuit; and (3) Whether the Defamatory Statements in the Lawsuit are true or not is not relevant, material, or pertinent to the claims made in the Lawsuit.

10

41.     Bedford was not even mentioned in the Lawsuit until page 20 other than identifying his address when describing the parties.

42.     The publication of the Defamatory Statements in the Lawsuit was not privileged.

43.     The Defamatory Statements in the Lawsuit are defamation per se.

2.      **THE CHANNEL 3 TELEVISION INTERVIEW**

44.     On or about January 2, 2013, Witte sat down with a reporter for WWMT Newschannel 3, an affiliate of CBS News, to voluntarily give an interview regarding Bedford and others.

45.     Witte knew that the statements he made during this interview would be aired on Channel 3 newscasts and be broadcast to a wide television audience.

46.     The interview given by Witte was aired on Channel 3 on or about January 2, 2013 to a wide television audience.

47.     During the interview, Witte made a number of defamatory statements about Bedford, including, but not limited to the following:

   A.     Witte stated that he **"can say with certainty"** that Bedford and others have committed the crimes of bribery, obstruction of justice, mail fraud, and wire fraud.

   B.     Witte stated that Bedford and others are **"absolutely"** part of a crime organization.

   C.     Witte stated that the crime organization that Bedford and others are involved in is far more serious than people realize.

D.    Witte stated that Bedford and others have broken the law in far more ways than are currently known.

(The foregoing are hereinafter collectively referred to as the Defamatory Statements in the Channel 3 Television Interview").

48.    Each of the Defamatory Statements in the Channel 3 Television Interview are false.

49.    The publication of the Defamatory Statements in the Channel 3 Television Interview was not privileged.

50.    The Defamatory Statements in the Channel 3 Television Interview are defamation per se.

## 3.    <u>THE WEB</u>

51.    Each of the Defendants perpetuated their smear campaign against Bedford by maliciously posting a copy of the Lawsuit on the website maintained by the Law Offices of Jordan C. Hoyer.

52.    Additionally, the Defendants maliciously posted a link to the interview Witte gave to Newschannel 3 as described in paragraphs 44 to 47.

53.    By virtue of the Lawsuit being posted on the Law Offices of Jordan C. Hoyer's website, the Defamatory Statements in the Lawsuit were published by the Defendants to the general public worldwide and were available for anyone to see.

54.    Similarly, by posting a link to the interview Witte gave to Newschannel 3 on the Law Offices of Jordan C. Hoyer's website, the Defamatory Statements in the

Channel 3 Television Interview were published by the Defendants to the general public worldwide and were available for anyone to see.

55.     The publication on the web of the Defamatory Statements in the Lawsuit and the link to the interview Witte gave to Newschannel 3, which Defendants presumably did for the purpose of enhancing their own marketing and self-promotion, was not privileged.

56.     The Defamatory Statements in the Lawsuit and the link to the interview Witte gave to Newschannel 3 that were posted on the web by the Defendants are defamation per se.

**4.     THE AMENDED COMPLAINT**

57.     On April 23, 2014, the Defendants filed an amended complaint in the United States District Court for the Western District of Michigan (hereinafter the "Amended Complaint").

58.     On April 25, 2014, the Defendants filed a corrected first amended complaint in the United States District Court for the Western District of Michigan (hereinafter the "Corrected Amended Complaint").

59.     The Defamatory Statements in the Lawsuit set forth in paragraph 33 are repeated in the Amended Complaint and the Corrected Amended Complaint.

60.     Additionally, the Amended Complaint and the Corrected Amended Complaint contain new statements about Bedford that are false and defamatory, including the following:

13

A.   "Bedford and Stewart have exchanged cash payments through Stewart's wife." (See Exhibit 2, ¶185).

B.   "Bedford refers criminal defendants to to Stewart, and uses his position as prosecutor to help Stewart with the cases he refers." (See Exhibit 2, ¶188).

C.   "Page used his relationship with [attorney Don] Sappanos to get him to donate the maximum campaign contribution to Defendant Bedford." (See Exhibit 2, ¶206).

(Hereinafter the "Defamatory Statements in the Amended Complaint").

61.   Such allegation are intended to imply and do imply that Bedford receives cash, directly or indirectly, from Page and Stewart as bribes in exchange for helping them in improper or illegal ways.

62.   Such allegations and their implications are false.

63.   The Defamatory Statements in the Amended Complaint and the Corrected Amended Complaint, as well as the Defamatory Statements in the Lawsuit which are repeated in the Amended Complaint and the Corrected Amended Complaint, are not relevant, pertinent, or material to the issues to be tried in the Lawsuit.

64.   The Defamatory Statements in the Amended Complaint and the Corrected Amended Complaint are not privileged.

65.   The Defamatory Statements in the Amended Complaint and the Corrected Amended Complaint are defamation per se.

66.   The Defendants maliciously published the Defamatory Statements in the Lawsuit, the Defamatory Statements in the Channel 3 Television Interview, the defamatory statements posted on the web, and the Defamatory Statements in the

Amended Complaint and the Corrected Amended Complaint (hereinafter collectively the "Defamatory Statements") with actual knowledge of the falsity of the statements or with reckless disregard for their truth or falsity.

67.    The Defendants knew that their sensationalized and scandalous allegations against Bedford would attract substantial media coverage and result in significant media coverage.

68.    In fact, Witte sought and/or consented to the interview with Newschannel 3 to pursue widespread media coverage of Defendants' salacious allegations, presumably in order to satisfy a desire for self-promotion and publicity, without regard to the devastating consequences such widespread media coverage would have on Bedford.

69.    The Defamatory Statements hold Bedford up to hatred, scorn, contempt, and/or ridicule, and were made with malicious intent.

70.    On February 28, 2014, Bedford requested that each of the Defendants publish a retraction of the the false and defamatory statements that they made to Newschannel 3 and posted on the internet.  (A copy of the February 28, 2014 retraction letters are attached as Exhibits 2 and 3).

71.    In response to Bedford's demand for a retraction, Witte sent a letter to Bedford's counsel dated March 4, 2014, inviting Bedford to explain certain alleged events and making a number of assertions that Witte claimed were supported by unnamed, unidentified witnesses.  (A copy of Witte's March 4, 2014 letter is attached as Exhibit 4).

15

72.     In response to Witte's March 4, 2014 letter, Bedford sent Witte a lengthy 15 page letter dated March 25, 2014 providing a detailed explanation of each alleged event that Witte invited Bedford to explain.  (A copy of Bedford's March 26, 2014 letter to Witte is attached as Exhibit 5).

72.     Additionally, Bedford's March 26, 2014 letter requested that Witte provide specific facts and details supporting his allegations instead of vague, conclusory statements.   In this letter, Bedford also repeatedly requested that Witte identify the alleged unnamed-witnesses that Witte claimed could testify as to the false and defamatory statements.  The letter explicitly warned Witte that if the Defendants refused to provide specific facts and details, and identify these alleged unnamed witnesses, it would strengthen Bedford's conviction that the Defendants had no legitimate or credible evidence to support their false and defamatory statements.  (See Exhibit 5).

73.     Bedford's March 26, 2014 letter concluded by again requesting that the Defendants issue a retraction as previously requested in his February 28, 2014 letter. (See Exhibit 5).

74.     Despite Bedford's written request, the Defendants did not provide any of the specific facts and details supporting their allegations requested by Bedford, and did not identify any of the unnamed witnesses that could allegedly provide credible testimony supporting the statements that Bedford claimed were false and defamatory.  In fact, the Defendants did not even reply to the March 26, 2014 letter attached as Exhibit 5.

75.     The Defendants have refused to publish a retraction of the false and defamatory statements.

16

76.    The false and defamatory statements by the Defendants are naturally and obviously damaging to Bedford's reputation and have damaged his reputation.

77.    In addition to impairing his reputation and causing him lost standing in the community, the false and defamatory statements have caused Bedford to suffer personal humiliation, mortification, embarrassment, mental anguish, and emotional distress.

78.    Though utterly false, the false and defamatory statements have created suspicion that Bedford is corrupt, has accepted bribes and is a crook.

79.    Such statements will or could impact Bedford's good name and the value of his good name by potentially diminishing or destroying his ability to win future elections.

80.    Such statements have also resulted in potential economic loss and other damages that are still being determined.

81.    Bedford has incurred some incremental or increased injury to feelings attributable to his sense of indignation and outrage as a result of the Defendants' bad faith and ill will.

82.    Bedford is entitled to exemplary and punitive damages.

WHEREFORE, Plaintiff, Michael J. Bedford, respectfully requests that this Court enter a judgment in his favor and against the Defendants in an amount consistent with the proofs submitted at trial, plus exemplary and punitive damages, together with interest, costs, and reasonable attorney fees.

SILVER & VAN ESSEN, P.C.
Attorneys for Plaintiff

Dated: December ___, 2014          By: _____
                                        Lee T. Silver  (P-36905)

BUSINESS ADDRESS & TELEPHONE:
       300 Ottawa Avenue N.W. – Suite 620
       Grand Rapids, MI  49503
       (616) 988-5600

18

# Exhibit 2

<u>**SUPPLEMENT IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS**</u>
<u>**NOTICE OF NEW FACTS TO BE JUDICIALLY NOTICED BY THE COURT**</u>

(1) Defendants Bedford and Stewart's lawsuit against Plaintiffs' counsel was filed on December 17, 2014.

(2) The case was disposed of on March 27, 2015 when Plaintiffs' counsel won their motion for summary disposition.

(3) Defendants Bedford and Stewart lost their motion for reconsideration and subsequently filed their claim of appeal on May 13, 2015.

# Exhibit 3

STATE OF MICHIGAN

IN THE COURT OF APPEALS

MICHAEL J. BEDFORD, an individual,

               Plaintiff-Appellant,

v

DEREK S. WITTE, an individual, JORDAN
C. HOYER, an individual, and THE LAW
OFFICES OF JORDAN C. HOYER, PLLC,
a Michigan professional limited liability
company,

               Defendants-Appellees.

Court of Appeals Case No:

Kent Co. Circuit Case No. 14-11752-CZ

**CLAIM OF APPEAL**

---

Lee T. Silver (P-36905)
Michael L. Gutierrez (P-79440)
SILVER & VAN ESSEN, P.C.
Attorneys for Plaintiff-Appellant
300 Ottawa Ave N.W. – Suite 620
Grand Rapids, MI 49503
(616) 988-5600

Kathleen H. Klaus (P-67207)
Harvey R. Heller (P-27351)
MADDIN HAUSER ROTH & HELLER,
P.C.
Attorneys for Defendants-Appellees
28400 Northwestern Highway, 3rd Floor
Southfield, MI 48034
(248) 359-7520

---

       Plaintiff-Appellant, Michael J. Bedford, by and through his attorneys, Silver & Van

Essen, P.C., hereby claims an appeal from the March 27, 2015 Opinion and Order In Re:

Defendants' Motion for Summary Disposition granting Defendant-Appellees' Motion for

Summary Disposition, entered by the Honorable Judge Mark A. Trusock of the Kent County

Circuit Court (See Exhibit A), and the April 24, 2015 Opinion and Order In Re: Plaintiff's

Motion for Reconsideration denying Plaintiff-Appellant's Motion for Reconsideration, entered by the Honorable Judge Mark A. Trusock of the Kent County Circuit Court (See Exhibit B).

An appeal bond is not required and this case does not involve the custody of a minor child. All relevant transcripts have either been filed or ordered.

SILVER & VAN ESSEN, P.C.
Attorneys for Plaintiff-Appellant

Dated: May _____ 13 _____, 2015          By: _____
                                              Lee T. Silver (P-36905)

BUSINESS ADDRESS AND TELEPHONE:
        300 Ottawa Avenue N.W. – Suite 620
        Grand Rapids, MI  49503
        (616) 988-5600

-2-