UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF MICHIGAN

HLV, LLC, a Michigan limited liability company; LANDWORTHY CONTAINER, LLC; a Michigan limited liability company; and ROBERT BAKER, an individual,

Plaintiffs,

-vs-

VAN BUREN COUNTY, a municipal corporation; VILLAGE OF PAW PAW, a municipal corporation; PAGE & STEWART, an ad hoc professional partnership; KELLY PAGE, an individual; GARY STEWART, JR., an individual; PAUL HAMRE, an individual; PEGGY GROTE, an individual, MICHAEL MCKAY, an individual, and MICHAEL BEDFORD, an individual,[1]

Defendants.

Case No. 1:13-cv-1366-PLM

HON. PAUL L. MALONEY

**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE**

COME NOW the Plaintiffs, by and through undersigned counsel, and submit this Brief in Support of their Motion for Sanctions for Spoliation of Evidence (the "Motion") and in support thereof, state the following:

## INTRODUCTION

Plaintiffs have been severely prejudiced by Defendant Page and Non-Parties Van Buren County and Judge Hamre's disposal of and/or destruction of evidence in this case. Despite receiving letters specifically directing them to preserve electronically stored information relating

[1] Defendants Van Buren County, Village of Paw Paw, Peggy Grote, Paul Hamre, Michael McKay and Michael Bedford have been dismissed by Orders of this Court dated June 29, 2015 and June 30, 2015.

to the present litigation, Defendant Page and non-Parties Van Buren County and Judge Hamre have disposed of at least two important electronic devices which likely contained information relevant to this litigation: a cellular telephone utilized by Defendant Page from 2012 through mid-2014, and an external hard drive containing information extracted from Judge Hamre's work computer which he utilized while employed by Van Buren County.

## BACKGROUND

The Complaint in this matter alleges inappropriate conduct by Defendants Kelly Page and Gary Stewart and certain state actors in the Van Buren County legal system to inappropriately influence the outcome of a civil collection matter; the majority of the allegations contained in the Complaint occurred throughout 2012 and early 2013. On July 19, 2013, then-counsel for the Plaintiffs sent Defendants, Van Buren County, and Paul Hamre (among others) a letter notifying the recipients that litigation was forthcoming and directing them to preserve all potentially relevant documents and electronically stored information. (*See* July 19, 2013 Letter from Hoyer attached as **Exhibit A**). That letter stated in pertinent part:

> I am writing to inform you that, in addition to your traditional discovery and preservation obligations, you have an obligation to preserve all Electronically Stored Information ("ESI") potentially relevant to this. *See* FRCP 26 and 27.
>
> **…**
>
> Your preservation obligation includes your duty to locate and preserve any such potentially relevant ESI that resides anywhere in your possession, custody, or control, including, but not limited to, ESI that resides on any of the following, which are within your possession, custody, or control, and with regard to whether they are currently in use:
>
> …
>
> - All mobile phones with storage capacity;
>
> …
>
> - All storage media, including but not limited to …removable or portable hard drives
>
> ...

(Ex. A at pg. 3).

On August 26, 2016, Plaintiffs issued subpoenas to Van Buren County and Paul Hamre requesting, among other things, the production of "any external hard drive used to store documents, files or electronically stored information from the IMAC computer or any other computer used by Paul E. Hamre during his employment with Van Buren County." In response, no external hard drive was either identified or produced by either Hamre or Van Buren County.

During the examination of a computer utilized by Hamre and identified and produced by Van Buren County, Plaintiffs formed a belief that certain documents and information were missing from the production. As a result, Plaintiffs reached out to the third party technology consultant who performed the search of Hamre's computer, Elijah, and inquired whether there was any evidence of deletion activity or data wiping on the Computer. Elijah responded:

> Regarding the Hamre Apple computer image, we found evidence that a partition on the imaged computer's hard drive, named "Macintosh HD", was formatted (erased) on July 4th 2013. With respect to an Apple computer, this partition contains the operating system along with user generated data; it can be compared to the C: partition of a standard Windows computer. Following the format, a Time Machine backup of the computer, which was created on July 2nd 2013, was restored from an external hard drive to the partition. Time Machine is Apple's proprietary data backup application which allows a user to create backups of their computers internal hard drive. We are unable to determine the identity of the external hard drive that contained the Time Machine backup. However, ***we did find evidence of a Western Digital My Book Essential Edition 2.0 hard drive having been inserted into the computer, on several occasions back in July 2013, after the restore took place.*** This hard drive may contain additional Time Machine backups which pre-date the July 2nd 2013 backup.

(*See* October 5, 2017 e-mail from Michal Sajdak attached as **Exhibit B**) (emphasis added). Thereafter, Plaintiff filed a Motion asking this Court to compel Van Buren County and Hamre to produce the external hard drive that had been identified by the third party technology consultant (hereinafter the "External Hard Drive"); Hamre and Van Buren County responded that they did not have any such hard drive and the Parties entered a Stipulation to that effect. (*See* Stipulation Regarding Motion to Compel Non-Parties Van Buren County and Paul Hamre attached as

**Exhibit C).**

In March of 2017, Plaintiffs issued its Third Requests to Product to Defendant Kelly Page in which they requested, among other things, "[a]ll cellular phones used or owned by Kelly Page since January 1, 2012 to current." In Response to that Request, Page represented that all such phones "will be produced in a manner and time agreeable by counsel." Defendant Page produced one cellular phone and upon forensic examination of the same, Plaintiffs discovered that the phone produced by Page had been put into service in mid-2014. When counsel for the Plaintiffs inquired about the phone utilized by Kelly Page from 2012 through mid-2014, which is the time period that covers the majority of the allegations of the Complaint, counsel for Page confirmed that Page no longer had that phone. (*See* Correspondence between counsel attached as **Exhibit D**).

## ARGUMENT

The United States Court of Appeals for the Sixth Circuit has stated that "[d]istrict courts have broad discretion to craft proper sanctions for the spoliation of evidence." *Adkins v. Wolever (Adkins II)*, 692 F.3d 499, 503 (6th Cir. 2012) (citing *Adkins v. Wolever (Adkins II)*, 554 F.3d 650, 652 (6th Cir. 2009)). "A proper spoliation sanction should serve both fairness and punitive functions and the "severity of a sanction may, depending on the circumstances of the case, correspond to the party's fault." *Adkins*, 554 F.3d at 652-653 (internal citations omitted). "[A] district court could impose many different kinds of sanctions for spoliated evidence, including dismissing a case, granting summary judgment, or instructing a jury that it may infer a fact based on lost or destroyed evidence." *Id.* Federal Rule of Civil Procedure 37(e)(2) states:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replace through additional discovery, the court:

…

> (2) only upon a finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
> (A) presume that the lost information was unfavorable to the party;
>
> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>
> (C) dismiss the action or enter a default judgment.

…

Fed. R. Civ. P. 37(e)(2).

In this case, a mandatory adverse inference instruction under Fed. R. Civ. P. 37(e)(2)(B) is warranted based on the intentional disposal of evidence as such an instruction would appropriately serve both fairness and punitive functions. "A party seeking an adverse inference instruction based on the destruction of evidence must establish (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Flagg v. City of Detroit*, 715 F.3d 165, 177 (2013). Here, all the elements are present as to Page's 2012-2014 cellular telephone as well as the external hard drive.

**A. Page's 2012-2014 Cellular Telephone**

There is no doubt that Page had complete control over his 2012-2014 cell phone and, having received the July 2013 preservation letter and become a party to the present litigation, had an obligation to preserve it when it was disposed of at some point in or after 2014. Moreover, given that Page has been an actively practicing attorney for over forty-two years, he is undoubtedly familiar with his duty to preserve evidence.

Second, Page had intent to deprive the Plaintiffs of the information contained on his 2012-2014 cellular telephone. There is no indication that any person other than Kelly Page ever

had possession of or disposed of the 2012-2014 cellular telephone, nor has any legitimate reason for its destruction or disposal been provided by Page. The only logical explanation for the destruction of Page's 2012-2014 cellular telephone is that Page sought to deprive Plaintiffs of the information contained thereon in the present litigation.

Finally, the 2012-2014 cellular phone is relevant to Plaintiffs' claims as it likely contained text communications between Page, Stewart and other alleged co-conspirators. In his deposition, Defendant Page confirmed that he utilizes text messaging. (*See* Excerpt of Deposition of Kelly Page attached as **Exhibit E** at 248:21-22). Moreover, an analysis of Page's most recent cellular telephone, which was provided in discovery, revealed numerous text messages between Page, Stewart, and other individuals who are alleged co-conspirators in this case. (*See* Sample of Text Messages from Page Cell Phone collectively attached as **Exhibit F**).

Page's 2012-2014 cellular phone may contain text message communications that would further explain the entry of certain *ex-parte* orders, particularly the *ex parte* order entered under suspicious circumstances on March 22, 2013. Deposition testimony has established the Order was not signed by Judge Hamre, but has not definitely established exactly who ***did*** sign the Order. Hamre testified that he authorized his law clerk, Paul Schaefer, to sign the March 22, 2013 *ex parte* Order, however, Schaefer testified that had he signed the order he would have "put 'P.S.' –you know, a slash, and then 'by—per Judge Hamre/P.S.'" (*See* Excerpt of Deposition of Paul Hamre attached as **Exhibit G** at 18:15-19:19; *see also* Excerpt of Deposition of Paul Schaefer attached as **Exhibit H** at 36:13-15). No such notation is found on the March 22, 2013 Order. Nor has the evidence and testimony definitively established how the March 22, 2013 Order was drafted and transmitted to the Court. Defendant Page testified that he neither drafted nor dictated it, yet after it was executed by Hamre, it was transmitted to opposing counsel via

facsimile on Page's behalf, with the fax cover sheet reflecting that it was from "Linda/Kelly L. Page, Esq." (Ex. E at 107:8-11; *see also* March 22, 2013 Fax attached as **Exhibit I**). Stewart similarly denied drafting the order, and couldn't definitely state whether he dictated it, yet there is a text message from Linda Page to Gary Stewart discussing the same. (*See* Excerpt of Stewart Dep. attached as **Exhibit J** at 56:11-22; *see also* text from Linda Page to Stewart attached as **Exhibit K**). Additionally, Plaintiffs have discovered that there were several phone calls between Prosecutor Bedford and Kelly Page as well as text messages between Defendant Stewart and Prosecutor Bedford at critical stages of the Donovan Visser prosecution. Thus, it is quite possible that there were text messages during that time period between Prosecutor Bedford and Page that could further support Plaintiffs' claims.

Clearly, a reasonable trier of fact could find that the contents of Page's 2012-2014 cellular phone could support Plaintiffs' claim. As such, Plaintiffs inability to examine text messages sent to or received from those individuals in the time period relevant to the Complaint is prejudicial, and warrants an adverse inference instruction.

**B. The External Hard Drive**

The award of spoliation sanctions for the destruction and/or disposal of the External Hard Drive under the control of either Van Buren County and/or Hamre is an admittedly closer call. However, consideration of the circumstances in this case favors the imposition of spoliation sanctions to compensate Plaintiffs for their inability to examine the information contained thereon which was likely to be relevant to this litigation. Notably, the non-parties against which Plaintiffs allege spoliation, Van Buren County and Paul Hamre, are not disinterested parties to this litigation—they not only are alleged co-conspirators in the present suit, but were originally named defendants in this action.

As previously discussed, both Van Buren County and Paul Hamre received letters notifying them of impending litigation and directing them to preserve all electronically stored information, specifically including any "removable or portable hard drives." (Ex. A). Hamre testified that although he doesn't recall connecting any external hard drive to his computer in July of 2013, that doesn't necessarily mean he did not do so. (Ex. G at 60:1-7). Moreover, Hamre admitted that he did remove certain items from his work computer stating "I thought all the stuff that I took was my personal stuff and I thought I did it on a disk." (Ex. G at 56:2-3, 16-19; 60:14-15). Hamre further testified that he deleted e-mails from his computer. (Ex. G at 139:8-16).

Discovery has revealed that Hamre did draft and save documents relevant to this litigation on his work computer prior to July 2013. One such significant document is a draft of the Affidavit of Hamre's secretary Peggy Grote which, if not outright false, cleverly created a false impression. The metadata associated with the draft Affidavit recovered from Hamre's computer indicates the document was created on June 21, 2016. (*See* Affidavit of Peggy Grote and corresponding metadata collectively attached as **Exhibit L**). Peggy Grote testified that she received the Affidavit (which includes substantially the same language as Judge Hamre's draft) for her signature from Defendants Page and Stewart's office a day or so prior to the date she signed it with Judge Hamre's approval—July 3, 2013. (Deposition of Peggy Grote attached as **Exhibit M** at 39:1-6, 14-20; 40:23-41:12; 44:7-10). Thus, Hamre must have communicated with Page and/or Stewart regarding the contents of the Affidavit before it was transmitted to Ms. Grote for her signature. Given the relevant documents and information found on Hamre's work computer, it is likely that the External Hard Drive inserted into Hamre's Computer in July of 2013 would also contain documents or information relevant to the ongoing litigation. Plaintiffs

believe that the External Hard Drive could reveal more damning evidence, specifically including electronic correspondence between Page/Stewart and Hamre which would provide further explanation as to the facts and circumstances regarding the drafting and transmission of the Affidavit of Peggy Grote.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court grant their Motion for Sanctions for Spoliation of Evidence, enter an Order reflecting the same, and instruct the jury in this case that it must presume that the information contained on Page's 2012-2014 cell phone and the External Hard Drive was unfavorable to the Defendants. In the alternative, Plaintiffs respectfully request that the jury be instructed that it may presume the information contained on Page's 2012-2014 cell phone and the External Hard Drive was unfavorable to the Defendants.

VISSER AND ASSOCIATES, PLLC

Dated: January 19, 2018

/s/ Brittany W. Burke

Donald R. Visser (P27961)
Brittany W. Burke (P81438)
Attorney for Plaintiffs
2480 - 44th St., SE - Ste. 150
Kentwood, MI 49512
(616) 531-9860
donv@visserlegal.com
bburke@visserlegal.com

**CERTIFICATE OF SERVICE**

I hereby certify that on January 19, 2018 the foregoing document was served on all parties of record via electronic mail.

By: /s/ Brittany W. Burke.