UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| HLV, LLC, ET AL., ) | |
|     Plaintiff, ) | |
| ) | No. 1:13-cv-1366 |
| -v- ) | |
| ) | HONORABLE PAUL L. MALONEY |
| PAGE & STEWART, ET AL., ) | |
|     Defendants. ) | |
| ) | |

## OPINION

Conversations between lawyers and judges within the confines of the judge's chambers are generally afforded the utmost confidentiality. But do participants to inappropriate ex parte communications maintain a reasonable expectation of privacy in their statements? How about when the negligence of one participant exposes the communication to opposing counsel via an open phone line? And what if the judge's office door remains open, within earshot of chambers staff and members of the public who call on the judge? These questions are now before the Court pursuant to Defendant Kelly Page's motion to suppress any recording of an ex parte communication he had with Defendant Stewart and Judge Paul Hamre on May 10, 2013—as well as any fruit stemming from the recordings.[1]

### I.

This is an action under § 1983 based on an alleged conspiracy to deprive Plaintiff, HLV, LLC, of its constitutional right to due process. HLV alleges that Defendants Gary

---

[1] The Court indicated at oral argument on March 26, 2018 that the motion was denied with a written opinion to follow. (ECF No. 429.)

1

Stewart and Kelly Page conspired with former state court judge Paul Hamre in a debt collection action.

As part of the debt collection litigation, the parties had a status conference on May 10, 2013. Kelly Page, and Gary Stewart, Jr. (both representing ELC) participated from Judge Hamre's office. William Donovan (also representing ELC) appeared by telephone.

HLV's representatives (Donovan Visser, Donald Visser, Rebecca Baker, and Robert Baker) also joined by phone. Both Donald Visser and Robert Baker used audio recorders to capture the contents of the hearing. After discussing the status of the case for approximately one hour, Hamre set the matter for a hearing the following Monday and concluded the status conference. The participants in Hamre's office heard a click—William Donovan hanging up. However, the HLV representatives remained on the line, and Hamre took no other action to disconnect the call.

Judge Hamre, Page, and Stewart then engaged in an ex parte conversation that was recorded without their knowledge. They discussed the case, cracked jokes, and described HLV's attorneys with derogatory terms, and Judge Hamre expressed his willingness to revise the settlement and continue the injunction. At some point, Judge Hamre's secretary, Peggy Grote, entered the office with a report HLV submitted, but Judge Hamre instructed her to throw it away.

2

## II.

The instant motion is brought pursuant to the Electronic Communications Privacy Act of 1986 ("Title III") and seeks suppression of all evidence stemming from the recording of the ex parte conversation. (ECF No. 392.) Title III makes it unlawful to "intentionally intercept[ ]. . . any wire, oral, or electronic communication." 18 U.S.C. § 2511(1)(a). The Act defines "intercept" to mean "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." *Id.* § 2510(4). In addition to criminal and civil penalties, Title III mandates that any evidence obtained in violation of the Act may not be used in any legal proceeding. *Id.* § 2515.

But Title III does not protect all conversations—or even all conversations that are secretly recorded. It covers "oral communications," which are defined as "any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation." *Id.* § 2510(2).

The Sixth Circuit has held that a person engages in protected oral communication only if he or she exhibited "an expectation of privacy that is both subjectively and objectively reasonable." *Dorris v. Absher*, 179 F.3d 420, 425 (6th Cir. 1999). This assessment parallels the reasonable-expectation-of-privacy test articulated by Justice Harlan in *Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring). The Sixth Circuit recently formulated the question as: "(1) whether a person exhibited an expectation of privacy [in his oral communications] and (2) whether that expectation was reasonable." *Huff v. Spaw*, 794 F.3d 543, 550 (6th Cir. 2015).

### III.

Defendant Page's written brief misses the mark because it focuses exclusively on the definition of intercept and omits any discussion of what is or is not a covered "oral communication" under Title III. At oral argument, Defendants argued that they had an expectation of privacy in their communications because communications in a judge's chambers are confidential and because they had no reason to suspect that Judge Hamre failed to hang up his office phone.

The discussion at oral argument largely focused on a Sixth Circuit case identified by HLV, *Huff v. Spaw,* cited *supra.* There, a business executive (the "Executive") pocket-dialed another employee of his organization. Executive had two conversations while the pocket-call continued: a forty-minute call with another coworker on a private balcony and a shorter conversation with his wife from the privacy of their hotel room. The recipient of the pocket-dial quickly discerned that Executive had not intended to place a call to her, but instead of hanging up, she listened, took notes, and eventually recorded the last four minutes of the call.

Executive and his wife filed a civil suit against the recipient under the private right of action provided by Title III. The district court granted summary judgment to defendant, finding that neither the Executive nor his wife had an objectively reasonable expectation of privacy in their statements. Instead, the court held that:

> it was unreasonable for Plaintiffs to expect that their face-to-face conversations would not be overheard by someone on the other end of a pocket dial phone call. If Plaintiffs expected that their conversations would not be overheard and recorded as they were, they could have done something to prevent it from happening. The easiest measure might have been to simply put the cell phone

away while they were having private conversations. Or [Executive] could have locked his phone to prevent a pocket dial call. But they did not take those measures, or any other measure, to prevent the inadvertent phone call from being placed. If anyone must bear the brunt of the embarrassing consequences of this pocket dial, it must be the caller; not the recipient who had every right to answer the call and remain on the line. 995 F. Supp. 2d 724, 734 (E.D. Ky. 2014).

On appeal, the Sixth Circuit approved of the district court's rationale. It analogized to a Ninth Circuit child pornography case where a law enforcement agent had discovered evidence via a file-sharing functionality on the defendant's computer. That court concluded that the search fell within the plain view doctrine because, "[t]o argue that [defendant] lacked the technical savvy or good sense to configure LimeWire to prevent access to his pornographic files is like saying that he did not know enough to close his drapes." The *Spaw* court then applied the same logic to the Executive's pocket-dial, noting that he had admitted that he was aware of the risk of making inadvertent pocket-dials but had not taken any steps to prevent them from occurring, like setting up a passcode, locking the phone or downloading any program that has been developed to prevent pocket dials. The court concluded that Executive was "no different from the person who exposes in-home activities by leaving drapes open or a webcam on and therefore has not exhibited an expectation of privacy." Thus, the Court held that Executive's utterances were not oral communications protected by Title III, so the defendant was not liable on the Executive's claim.

However, the *Spaw* court reversed and remanded on the Chairman's wife's claim because it concluded that she had a reasonable expectation of privacy in the conversation with her husband in their hotel room. In other words, she was not required "to exhibit an

5

expectation of total privacy—e.g., by searching her husband and forcing him to turn off his phone—in order to be protected under Title III."

The Court agrees with HLV that *Spaw* is the most relevant authority to guide the resolution of the instant matter. And for no fewer than three reasons, Page's motion fails.

First, the Court concludes that Judge Hamre—a participant to the conversation—negligently exposed the conversation to HLV's representatives by failing to hang up his office phone, meaning that the call would fall within the same auditory plain-view theory described at length in *Spaw*. 794 F.3d at 550–553. As the district court held, Executive could have taken any number of measures to prevent being overheard by the recipient of the pocket-dial. But unlike the Executive's wife, Page and Stewart were aware of the existence of the phone call, so the rationale that resulted in reversing and remanding on the Executive's wife's claim is not relevant to them. *Id.* at 554. In other words, while the Executive's wife was not required to search her husband and turn his phone off, Page and Stewart should have verified that the phone line had been disconnected before engaging in an ex parte communication because they were aware of the call.

Second, the Court finds that the participants failed to shield their ex parte conversation from Peggy Grote (and thus any member of the public calling on Judge Hamre) which means that they failed to exhibit an expectation of privacy as required under Title III.

In answering a motion for recusal based on these ex parte communications, Page and Stewart obtained an affidavit from Peggy Grote about the events in question. Grote averred that she was at her desk just outside of Hamre's office for the length of the status conference and that Hamre's door remained open the entire time. (ECF No. 346-18.) She testified at

6

her deposition that during the status conference, she was busy with several activities, including "answering the phone" and **"waiting on people . . . that come in and ask questions . . . [.]"** (ECF No. 415-5 at PageID.6710 (emphasis added).)

The presence of other individuals, even if they do not participate in the conversation, leaves a speaker with no expectation of privacy in his statements. *See, e.g., Caro v. Weintraub*, 2009 WL 2358919 (D. Conn. 2009), *aff'd*, 618 F.3d 94 (2d Cir. 2010) (concluding that speaker had no subjective expectation of privacy where he spoke in presence of others and knew they could hear his statements). Accordingly, when Page, Stewart, and Hamre engaged in ex parte communications in Hamre's office, with the door open, in ear shot of Peggy Grote and, potentially, members of the public, they had no subjective expectation of privacy in their statements.

Finally, the Court does not believe that society is prepared to recognize an expectation of privacy in grossly inappropriate ex parte communications between judicial officers and officers of the court. Michigan Rule of Professional Conduct 3.5 bars lawyers from improperly influencing or communicating ex parte with judges. This rule exists to ensure public confidence in the integrity and impartiality of the judiciary. As a matter of public policy, society will not accept that an expectation of privacy in ex parte communications is reasonable. Every lawyer is aware of their obligation to avoid such communications, and of the rationale for the rule. Any belief that such communications are private is unreasonable.

For these reasons, the ex parte statements made by the Defendants are not "oral communications" for purposes of Title III, so the recordings are not subject to suppression for violation of the Act. Accordingly, the motion (ECF No. 392) is **DENIED.**

**IT IS SO ORDERED.**

Date:   March 28, 2018               /s/ Paul L. Maloney
                                     Paul L. Maloney
                                     United States District Judge