UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| HLV, LLC,              ) | |
|     Plaintiff,      ) | |
|                 ) | No. 1:13-cv-1366 |
| -v-           ) | |
|                 ) | HONORABLE PAUL L. MALONEY |
| PAGE & STEWART, ET AL.,     ) | |
|     Defendants.   ) | |
| _____) | |

## OPINION

This matter is before the Court on Plaintiff, HLV LLC's motion to preclude Defendant Gary Stewart from introducing two court filings from the underlying collection matters, as well as any evidence or testimony suggesting that attorneys' fees in the underlying collection matter have been paid.

Plaintiff argues that this evidence is not relevant because in a previous order, (ECF No. 431), the Court ruled that HLV had not met its obligations under the Federal Rules of Civil Procedure to pursue those fees as damages. Stewart responds that barring the proposed evidence would flip the Court's sanction on its head, placing him in a "strait jacket" at trial. (ECF No. 468 at PageID.7323.)

After reviewing the submissions, the Court lacked clarity on HLV's theory of damages, and so it ordered HLV to file a supplemental brief documenting the damages it intended to seek at trial so that the Court could determine whether the evidence referenced in the motion remained relevant.

1

**I.**

HLV's supplemental brief is illuminating. HLV indicates, for the first time, that it intends to seek actual damages for more than just the attorney's fees in the underlying collection matter.

Plaintiff claims the October 11, 2012 settlement agreement created an "expectancy of $1.5 million dollars" based on a valuation of 600 trailers at $2,500 per unit. It also claims it had an additional expectancy of $17,000 per month from the book of business it received from ELC.

After the events of the alleged conspiracy took place, and after the case was reassigned to Judge Dodge, the parties to the underlying case stipulated that ELC would pay $684,000 for all claims, causes of action, penalties, interest, and attorney's fees to date. Judge Dodge also appointed a receiver to liquidate the assets of ELC for that purpose.

HLV indicates that the jury could use the $1.5 million figure as a starting point. The jury would then consider the "wear and tear" on the units and other expenses caused by transportation regulations—which HLV argues to be within the jurors' common knowledge— as well as any other factors they deem relevant to set off that figure. In sum, HLV seeks to collect 1.5 million, less the $684,000 it received from ELC, and less any depreciation of value found by the jury because it asserts that the Defendants' due process conspiracy caused it to sell off the units prematurely and for less than it should have received.

Stewart filed a response to the supplemental filing. (ECF No. 477.) He argues that Plaintiff has sought only attorney's fees as compensatory damages throughout this action and is attempting a "trial by surprise" by putting forward a different theory for the first time in its

2

supplemental filing. Thus, Stewart moves the Court for an Order that would bar HLV from seeking compensatory damages at trial.

## II.

The record supports Stewart's position for several reasons.

At the summary judgment phase, Defendants argued that they were entitled to summary judgment because HLV had not shown damages.[1] While that was not an accurate statement of the law, HLV's response was that they *did* have actual damages. It said:

> "[D]espite Defendants' insistence to the contrary, the Plaintiffs have **sustained an enormous amount of monetary damages in the form of attorney's fees** incurred as a direct result of Judge Hamre's continued failed and refusal to enforce the Amended Settlement. . . . Defendants attempt to undermine the Plaintiff's claims by asserting the Plaintiffs have sustained no damages as a result of [their] conduct is entirely without merit."

(ECF No. 346 at PageID.4668–69 (emphasis added).) Notably, HLV did not assert actual damages based on any of the figures that appear in their supplemental brief, and they did not assert that the due process conspiracy caused HLV to sell the monthly "book of business" that it had obtained from ELC prematurely.

HLV's response to the summary judgment was mostly consistent with the way it conducted discovery. Plaintiffs' initial disclosures were devoid of any mention that the alleged conspiracy caused a "distressed sale" so that HLV took less than the units were worth, or

---

[1] At the time, Robert Baker and Landworthy Container, LLC were also plaintiffs in the action, and Michael Bedford, Michael McKay, and Kelly Page were defendants. All have since been dismissed.

3

sold the units more quickly than it otherwise would have. HLV did not amend its disclosures to put forward such a claim, and it has never provided a computation of damages to that effect.

HLV's owner, Harold Voorhees, testified that he did not know when the damages caused by the conspiracy started. He also testified that he was not sure how many units HLV had repossessed from ELC. Voorhees said that Robert Baker would know how many units HLV had owned (through Landworthy Container, another LLC that he controlled).

Importantly, Robert Baker testified that he was not sure how many units HLV/Landworthy had repossessed from ELC, and he was unsure of how many units the companies had sold to third parties. (ECF No. 477-9 at PageID.7422.) He noted that Landworthy continued receiving about $7,000 a month from leasing the remaining units. (*Id.*) Finally, Baker was asked about damages claimed by HLV in this matter. Baker testified that he did not know what those damages were. But he said that HLV was losing money because "the case was ongoing" and that "it's expensive to have four lawyers and a [court] recorder [for the deposition]." (*Id.* at PageID.7425.) Asked to explain this comment, Baker agreed that the *only* way HLV lost money was to pay for its attorneys. (*Id.* at PageID.7425–26.)

Now, after the Court ordered a supplemental brief to clarify the issue of damages on the verge of trial, HLV constructed an entirely new theory of damages that is not supported by the testimony of its representatives, rather than clarifying an existing theory. Prior to this filing, HLV made no representation that it intended to seek damages related to the $17,000 "book of business" that it obtained from HLV. Additionally, at no point in discovery did

4

HLV produce records of how many trailers it had received from ELC, or what it had done with any trailers it received. Those records are directly relevant under HLV's new theory because Stewart would be entitled to argue that any income produced from the subsequent sale of the repossessed trailers should be set off against the alleged $1.5 million "expectancy." As the record now stands, Stewart has no idea how many units HLV took from ELC.

To allow HLV to pursue this "expectancy" theory would be overwhelmingly prejudicial to Stewart because, as shown, HLV has consistently claimed that the compensatory damages relating to the due process claim were for the underlying attorneys' fees. If HLV had put forward the expectancy theory prior or during discovery placing Stewart on notice, Stewart would have conducted additional or different discovery to prepare a defense against such a claim. Requiring him to defend against the claim now, when the time to trial is calculated in hours rather than days, is exactly the kind of unfair surprise that discovery and pretrial procedure are designed to prevent. *Cf. Priddy v. Edelman,* 883 F.2d 438, 446–447 (6th Cir.1989) (concluding that allowing plaintiff to amend complaint to include new damages theory after motion for summary judgment and close of discovery would be "manifestly unfair and unduly prejudicial"); *Birchwood Conservancy v. Webb*, No. 5:12-cv-335, 2014 WL 4443467 (E.D. Ky. Sept. 9, 2014) (concluding that proposed testimony of expert identified after the close of discovery, who proffered a new damages theory, was a "complete game-changer" and excluding his testimony because of fundamental unfairness and prejudice).

The only alternative to exclusion of this theory of damages would be to adjourn the trial date (less than 24 hours prior to commencing) and to reopen discovery. It would require

5

Stewart to re-depose multiple witnesses, and it would further delay this matter, which is already long-in-the-tooth, and for which discovery was described as "scorched earth litigation" and involved the production of more than one million pages of documents. Reopening discovery simply is not a viable option. Thus, the Court will bar HLV's new theory of compensatory damages because of the prejudice Stewart would experience to defend himself against a theory for which he had no notice.

### III.

In addition to compensatory damages, HLV seeks "presumed" damages. "Presumed damages are a substitute for ordinary damages, not a supplement for an award that fully compensates the alleged injury." *Memphis Community Sch. Dist. v. Stachura*, 477 U.S. 299, 310 (1986). Presumed damages still require an actual harm, but they may used as a stand-in "when a plaintiff seeks compensation for an injury that is likely to have occurred but difficult to establish . . . ." *Id.*

In *Stachura*, a public school teacher in Tennessee was suspended without a hearing after parents complained about the teaching methods he had used during the unit on human reproduction. *Id.* at 299. He filed suit under Section 1983 for a violation of procedural due process. *Id.* A jury awarded him $275,000 in compensatory damages even though he had retained his salary while suspended and that the district ultimately reinstated him. *Id.* at 312 n.15. The jury awarded an additional amount of $46,000 in punitive damages. *Id.* at 299.

The particular issue raised for the Supreme Court was whether the district court had given erroneous jury instructions. The district court had authorized the jury to award three categories of damages: (i) compensatory damages for injury to the plaintiff, (ii) punitive

6

damages, and (iii) damages based on the jury's perception of the "importance" of two provisions of the Constitution. *Id.* at 305.

On review, the Court determined the third category of damages to be in error because they were based on a subjective valuation of a Constitutional right and were not an attempt to "roughly approximate the harm that the plaintiff suffered." *Id.* at 308. As the Court noted, even presumed damages must be tied to the concept of "compensation." *Id.*

But the Court did not stop there. It further concluded that even if the district court had given a proper instruction on presumed damages, the award would still have been erroneous. *Id.* at 311–12. It ruled that presumed damages were not necessary or appropriate in the case because "the jury was fully authorized to compensate [the plaintiff] for both monetary and nonmonetary harms caused by the [defendants'] conduct[,]" based on the other jury instructions given. *Id.* at 312. In other words, the presumed damage doctrine was not necessary to compensate a teacher that had been deprived of his right to procedural due process when he was terminated without a hearing. *Id.*

Applying the lesson of *Stachura*, HLV is not entitled to seek presumed damages at trial. The guiding principle is that "[p]resumed damages are a substitute for ordinary damages" where "a violation is likely to have occurred but difficult to establish." *Id.* If a plaintiff is barred from seeking "ordinary" compensatory damages at trial for a failure to comply with the relevant rules of civil procedure, then presumed damages are also barred. To do otherwise would allow HLV to make an end-run around the Court's imposed sanction.

Putting it differently, if Plaintiff had expressed a consistent compensatory damages theory during discovery, complete with the production of relevant documents and a computation of those damages, it could have pursued that theory at trial. Under that scenario, HLV would not be entitled to presumed damages. This is not a situation in which "a plaintiff seeks compensation for an injury that is likely to have occurred but difficult to establish . . . ." *Id.* (citing *Carey*, 435 U.S. at 262). Accordingly, as the Court indicated *supra*, HLV cannot seek compensatory damages at trial, and because presumed damages are a substitute for compensatory damages, they too are barred.

## ORDER

Based on the reasons described above, The Court **ORDERS** that Plaintiff has not presented a theory of compensatory damages that it can pursue at trial. Accordingly, Plaintiff may seek only an award of nominal and punitive damages at trial.

**IT IS FURTHER ORDERED** that Plaintiff's motion in limine to preclude testimony suggesting that the attorneys' fees in the underlying case were paid, the Febuary 14, 2014 Order and, Satisfaction of Judgment is **DENIED WITHOUT PREJUDICE.** If Stewart seeks to introduce either document, the Court will revisit the issue based upon the then-existing trial record. However, given the scope of the issues remaining to be tried to the jury, the Court finds it unlikely that Stewart will seek to have the documents admitted for any purpose.

**IT IS SO ORDERED.**

Date:   April 17, 2018                                                                /s/ Paul L. Maloney
                                                                                      Paul L. Maloney
                                                                                      United States District Judge