UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF MICHIGAN

_____

HLV, LLC, a Michigan limited liability
company; LANDWORTHY CONTAINER,
LLC; a Michigan limited liability company;
and ROBERT BAKER, an individual,

        Plaintiffs,

-vs-

VAN BUREN COUNTY, a municipal corporation;
VILLAGE OF PAW PAW, a municipal corporation;
PAGE & STEWART, an ad hoc professional
partnership; KELLY PAGE, an individual;
GARY STEWART, JR., an individual; PAUL
HAMRE, an individual; PEGGY GROTE, an
individual, MICHAEL MCKAY, an individual,
and MICHAEL BEDFORD, an individual,[1]

        Defendants.

Case No. 1:13-cv-1366-PLM

HON. PAUL L. MALONEY

_____

**BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR COSTS AND ATTORNEY
FEES PURSUANT TO FED. R. CIV. P. 54(d)(2) and 42 U.S.C. § 1988(b)**
_____

COMES NOW the Plaintiff, by and through undersigned counsel, and submits this Brief in Support of its Motion for Costs and Attorney Fees Pursuant to Fed. R. Civ. P. 54(d)(2) and 42 U.S.C. § 1988(b):

**INTRODUCTION**

Plaintiff has successfully proved that it was "deprived of its property without due process of law as a result of a conspiracy between Stewart and Hamre or between Stewart, Page and Hamre." (ECF 497, PageID. 7537). As a result, Plaintiff is the "prevailing party" under 42

---

[1] Defendants Van Buren County, Village of Paw Paw, Peggy Grote, Paul Hamre, Michael McKay and Michael Bedford have been dismissed by Orders of this Court dated June 29, 2015 and June 30, 2015.

U.S.C. § 1988(b) and is entitled to its costs and attorney fees incurred in connection with this case. Plaintiff's victory did not come easy in this case—indeed, Defendant vigorously litigated this case for nearly four and a half years and has caused Plaintiff to incur substantial costs and attorney fees in doing so. During this time period, extensive discovery took place and counsel for Plaintiff drafted and responded to countless Motions on behalf of its client, all which were necessary to get this case to trial. Counsel for Plaintiff succeeded at trial by obtaining a favorable jury verdict and judgment which vindicated the Plaintiff's rights. Congress enacted § 1988(b) to encourage attorneys to take cases and represent civil rights plaintiffs in cases that do not have substantial economic value. The congressional intent of § 1988(b) is particularly applicable in a case such as this, where Plaintiff has received an important and meaningful jury verdict which not only acknowledges the importance of our constitutional right to due process of law, but operates to deter others in the legal system from engaging in this type of behavior.

**STATEMENT OF FACTS AND PROCEDURAL BACKGROUND**

There is no doubt that the Court is extremely familiar with the facts of this case. As such, Plaintiff will not restate the facts underlying this lawsuit. However, for purposes of this Motion, the procedural posture of this case is extremely important, as it provides significant and necessary context for Plaintiff's request for costs and fees. As such, Plaintiff will concentrate its efforts on outlining the procedural background of this case.

This federal lawsuit was initially filed on behalf of the Plaintiffs by attorneys Jordan Hoyer and Derek Witte on December 23, 2013 and a First Amended Complaint was filed thereafter on April 23, 2014. (*See* ECF 1 and 47). The First Amended Complaint named the County of Van Buren, the Village of Paw Paw, Page & Stewart, Kelly Page, Gary Stewart, Jr., Paul Hamre, Peggy Grote, Michael McKay and Michael Bedford as Defendants and contained

2

counts for RICO § 1962(c)(Count I), RICO conspiracy (Count II), RICO aiding and abetting (Count III), violation of 42 U.S.C. § 1983 (Count IV, conspiracy to commit 42 U.S.C. § 1983 (Count V), malicious prosecution (Count VI) and tortious interference with contract (Count VII). (*See* ECF 47).  Defendants County of Van Buren, Paul Hamre, Peggy Grote, Michael McKay and Michael Bedford were dismissed on the basis of immunity by Order dated June 29, 2015. (ECF 96)**.**  Defendants Page, Stewart and Page & Stewart also filed Motions to Dismiss the claims against them; the Court granted those Motions by its June 30, 2015 Order, but granted Plaintiffs leave to amend their Complaint to properly plead the § 1983 claims.  (ECF 98).

At some point in 2014, then-counsel for Plaintiffs Jordan C. Hoyer and Derek S. Witte were threatened and then served with a lawsuit for defamation related to statements allegedly made in connection with their representation of the Plaintiffs in this case.  As a result, Hoyer and Witte filed and Motion to Withdrawal which was granted by this Court's August 6, 2015 Order. (ECF 108).  Upon Hoyer and Witte's withdrawal from the case, Plaintiff undertook significant efforts to locate replacement counsel without success.

Visser and Associates PLLC entered its appearance on behalf of the Plaintiffs on September 7, 2015.  A Second Amended Complaint was filed on October 8, 2015.  (ECF 114). Defendants Page, Stewart and Page & Stewart once again filed Motions to Dismiss, but those Motions were denied by an Order dated April 22, 2016.  (ECF 133).  Thus, claims remained against Page, Stewart and Page & Stewart for conspiracy to violate 42 U.S.C. § 1983.

A Rule 15 Scheduling Conference was held on July 22, 2016 and thereafter, extensive discovery took place including seventeen (17) depositions, the exchange of hundreds of thousands of pages of documents, the forensic analysis of four computers and two cellular phones, the issuance of at least thirteen (13) subpoenas to third-parties and the submission of

multiple Freedom of Information Act requests to certain governmental bodies in Van Buren County.  Discovery was extremely complex and exceedingly difficult as a result of the Defendants' and interested third parties' reluctance (and at times, outright refusal) to cooperate and provide the requested information.  As a result, Plaintiffs were forced to file nearly a dozen Motions to Compel as well as a Motion for Spoliation of Evidence.  (*See* ECF 172, 175, 178, 221, 255, 286, 289, 308, 328, 361 and 375),

Upon the completion of discovery, Defendants Page, Stewart and Page & Stewart filed Motions for Summary Judgment as to the claims remaining against them.  Defendants' Motions for Summary Judgment were heard by this Court on February 2, 2018.  This Court granted the Motions with regard to the § 1983 claims for malicious prosecution and dismissed those counts against the Defendants.  (ECF 372).  However, this Court denied Defendants' Motions as to the § 1983 claim for a violation of due process and that claim was allowed to proceed to trial.  (ECF 372).  Notably, Defendants also filed and Plaintiff responded to nine (9) pretrial Motions in the weeks and months preceding trial, including but not limited to various motions in limine, a motion to suppress evidence of the recording, and a motion to amend a prior order and dismiss certain parties.  (*See* ECF 337, 357, 384, 386, 388, 390, 392, 396 and 403).

A day or two before trial was scheduled to commence, Defendant Page and the alleged entity of Page & Stewart reached a settlement with the Plaintiff.  In accordance with the terms of that settlement agreement, Defendants Page and Page & Stewart were dismissed from the case by Order dated April 17, 2018.  (ECF 485).  Trial on the conspiracy claim as to Defendant Stewart proceeded to trial on April 18, 2018 and concluded on April 26, 2018 on which date the jury returned a verdict in favor of Plaintiff HLV and awarded nominal damages.  (ECF 497, PageID. 7537).  The Court entered a Judgment consistent with the jury's' verdict.  (ECF 498,

PageID. 7539). Plaintiff now brings the present Motion pursuant to pursuant to 42 U.S.C. § 1988(b) to recover its attorney fees associated with this litigation.

## ARGUMENT

### I.   Plaintiff is Entitled to an Award of Attorney Fees Under 42 U.S.C. § 1988(b).

The Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988(b), permits a prevailing plaintiff to recover attorney fees in proceedings vindicating civil rights violations, stating that:

> In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318 [20 U.S.C. 1681 et seq.], the Religious Freedom Restoration Act of 1993 [42 U.S.C. 2000bb et seq.], the Religious Land Use and Institutionalized Persons Act of 2000 [42 U.S.C. 2000cc et seq.], title VI of the Civil Rights Act of 1964 [42 U.S.C. 2000d et seq.], or section 13981 of this title, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity such officer shall not be held liable for any costs, including attorney's fees, unless such action was clearly in excess of such officer's jurisdiction.

42 U.S.C. § 1988(b). "Although § 1988 uses permissive language regarding fee awards, 'the Supreme Court has read [§ 1988] as mandatory where the plaintiff prevails and special circumstances are absent.'" *Hescott v. City of Saginaw,* 757 F.3d 518, 523 (2014) (citing *Déjà vu v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.,* 421 F.3d 417, 420 (6th Cir. 2005) (citing *Indep. Fed'n of Flight Attendants v. Zipes,* 491 U.S. 754, 761, 109 S. Ct. 2732, 105 L. Ed. 2d 639 (1989)); *Berger v. City of Mayfield Heights,* 265 F.3d 399, 406-07 (6th Cir. 2001)).

####    a.  The Policy Behind § 1988.

The policy behind § 1988(b) is of the utmost important in considering the present Motion for attorney's fees. "Congress enacted § 1988 specifically to enable plaintiffs to enforce the civil rights laws even where the amount of damages at stake would not otherwise make it feasible to do

5

so." *City of Riverside v. Rivera,* 477 U.S. 561, 577, 106 S. Ct. 2686, 91 L. Ed. 2d 466 (1986). Section 1988 has a clear remedial objective—providing private citizens an opportunity to seek redress for individual harm while also securing important social benefits for the public as a whole. In this regard, the United States Supreme Court has stated:

> Unlike most private tort litigants, a civil rights plaintiff seeks to vindicate important civil constitutional rights that cannot be valued solely in monetary terms. And Congress has determined that 'the public as a whole has an interest in the vindication of the rights conferred by the statutes enumerated in § 1988, over and above the value of a civil rights remedy to a particular plaintiff….' Regardless of the form of relief he actually obtains, a successful civil rights plaintiff often secures important social benefits that are not reflected in nominal or relatively small damages awards.

*Id.* at 574 (internal citations omitted). Section § 1988 also has an important deterrent objective to prevent similar violations from occurring in the future. *See Popham, v City of Kennesaw,* 820 F.2d 1570, 1580 (11th Cir. 1987) ("The affirmation of constitutional principles produces an undoubted public benefit that courts must consider in awarding attorney's fees under Section 1988. When courts affirm the constitutional rights of citizens, public officials are deterred from violating other citizens' rights in the future."). The deterrent objective is particularly important in a case such as this which involved people in high-power positions within the Van Buren County legal community abusing that power and violating the constitutional rights of the public for their own gain.

### b. Plaintiff is the "Prevailing Party" Under § 1988 and No "Special Circumstances" are Present to Support the Denial of Fees.

Plaintiff HLV is the prevailing party for purposes of § 1988 and no special circumstances are present to support the denial of fees in this case. The Sixth Circuit has defined "prevailing party" in the context of § 1988, stating:

> To be a 'prevailing party,' a party must succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit….The Supreme Court has rejected a 'central issue test' which would require a

6

party to succeed on the main issue of the litigation to be considered 'prevailing.' Rather, a party who partially prevails is entitled to an award of attorney's fees commensurate to the party's success.

*Granzeier v. Middleton,* 173 F.3d 568, 577 (6th Cir. 1977). Plaintiff has not only succeeded on a significant issue in this case but has succeeded on the main issue of the litigation by proving by a preponderance of the evidence that HLV was "deprived of its property without due process of law as a result of a conspiracy between Stewart and "Hamre or between Stewart, Page and Hamre," obtaining a jury verdict awarding nominal damages and a judgement reflecting the same. The United States Supreme Court has clearly established that a civil rights plaintiff who receives a nominal damages award is a "prevailing party" for purposes of recovering fees under § 1988. *Farrar v. Hobby,* 506 U.S. 103, 113 S. Ct. 566, 121 L. Ed. 2d 494 (1992).

Moreover, an award of attorney fees is mandatory under § 1988 absent "special circumstances." *Hescott,* 757 F.2d at 523. " The United States Supreme Court has offered little guidance on what constitutes 'special circumstances,' and as a result, the Sixth Circuit has adopted a "case-by-case" inquiry in which "a non-prevailing defendant bears the burden 'to make a strong showing that special circumstances warrant a denial of fees.'" *Id.* at 523. However, "courts have made clear that special circumstances should not easily be found." *Id.* (quoting *Cleveland v. Ibrahim,* 121 F. App'x 88, 90 (6th Cir. 2005)). Notably, "a plaintiff's failure to win punitive damages does not constitute special circumstances warranting the denial of attorney's fees." *Id.* at 526. No special circumstances exist in the present case and as a result, Plaintiff as the prevailing party in this lawsuit is entitled to an award of its attorney fees under § 1988.

  **II.**  **Plaintiff's Requested Attorney Fees are Reasonable.**

The United States Supreme Court has stated that "[t]he essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Fox v. Vice,* 563 U.S. 826,

7

837; 131 S.CT. 2205, 2216 (2011). The Sixth Circuit has set forth the methodology for calculating a reasonable attorney's fee award:

> A starting point is to calculate the number of hours reasonable expended on the litigation multiplied by a reasonable hourly rate… The court should then exclude excessive, redundant, or otherwise unnecessary hours. Next, the resulting sum should be adjusted to reflect the "results obtained." This involves two questions: first, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?

*Jordan v. City of Cleveland,* 464 F.2d 584, 602 (6th Cir. 2006) (quoting *Wayne v. Village of Sebring,* 36 F.3d 517, 531 (6th Cir. 1994). Additional factors which may be considered by the Court include:

> (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or continent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Geier v. Sundquist,* 372 F.3d 784, 792 (6th Cir. 2006); *Hensley v. Eckerhart,* 461 U.S. 424, 430 n.3, 434 n.9, 103 S. Ct. 1933, 76 L. Ed. 2d. 40 (1983). Plaintiff respectfully submits that consideration of many of the above enumerated factors supports enhancement of the requested fees.

As outlined in detail above, this matter was diligently pursued by counsel for Plaintiff and aggressively defended by counsel for Defendants. That effort is reflected not only by the sheer volume of documents filed in this case (well over 500), but also by the billing statements produced by counsel for Plaintiff, which detail the enormous amount of time and labor which was required to litigate this case through trial. (*See* Affidavit of Donald R. Visser attached as **Exhibit A;** Visser and Associates Billing Statement attached as **Exhibit B**; Affidavit of Nick Bostic

8

attached as **Exhibit C**; Bostic Billing Statement attached as **Exhibit D;** Curriculum Vitae of Nick Bostic attached as **Exhibit E**).  Additionally, the affidavits of attorneys Donald R. Visser and Nick Bostic demonstrate that all counsel charged reasonable rates for their services in this case, particularly given the difficulty of litigating civil rights claims.  This is evident by a comparison of the rates charged to the Plaintiff in this case to those customary for attorneys with similar experience and practicing in firms of similar size per the Michigan State Bar's 2017 Economics of Law Practice Attorney Income and Billing Rate Summary Report, which is approved for use by the 6th Circuit in calculating prevailing rates.  (SBM Fee Survey attached as **Exhibit F;** Ex. B and D; see also *Auto Alliance Intel, Inc. v. U.S. Customs Serv.,* 155 Fed. Appx. 226, at *1 (6th Cir. 2005)).

In addition, the novelty and difficulty of the question in this case supports enhancement of fees.  Indeed, Plaintiff was unable to locate any case with similar facts within the Sixth Circuit— i.e., a Judge conspiring with local attorneys to deprive litigants of their constitutional rights.  Conspiracy cases under § 1983 are unusual and require proof of additional elements beyond a typical § 1983 case.  This is evident by the glaring lack of model jury instructions for a conspiracy case under § 1983 not only in the Western District of Michigan Standardized Jury Instructions, but also O'Malley, Grenig & Lee's *Federal Jury Practice and Instructions.*  This case also included some unique and novel issues with regard to electronic discovery including but not limited to questions concerning the imposition of sanctions for spoliation of electronic evidence by a non-party co-conspirator.

This Court should also consider that this case was extremely undesirable.  As the Court will recall, Plaintiff initially retained the services of attorneys Joran Hoyer and Derek Witte in this matter, but they withdrew from the case in August of 2015 after being accused of and served with

a lawsuit alleging defamation by Defendant Stewart and another individual. Plaintiff made many attempts to obtain new counsel but could not find anyone who was willing to take on a case accusing attorneys, judges and prosecutors of such improprieties. Indeed, taking on such case can have a severe negative impact on an attorney's career. This concern is best exemplified by the testimony of witness Matthew DePerno, who stated that he can no longer practice in Van Buren County as a direct result of merely being named in the Complaint in this matter. Visser and Associates, which represented the Plaintiff in the underlying collection matter which was the subject of this litigation, eventually agreed to take this case to vindicate Plaintiff's rights. However, when Defendants sought disqualification of Visser and Associates from the case based on their involvement in the underlying matter, Plaintiff again attempted to locate counsel to take over this case without much success. Many attorneys contacted by or on behalf of the Plaintiff expressed the same concerns about taking such a politically charged case without the assurance of success and indicated they would be more willing to consider taking the case upon the Court's decision on Defendants' Motions for Summary Judgment. The Court issued its Order on Defendants' Motions for Summary Judgment on February 2, 2018—a little over two months before trial was scheduled to commence on April 17, 2018. Again, Plaintiff renewed its attempts to locate trial counsel but many of those contacted now expressed concerns over the obvious time constraints. Finally, approximately a month before trial, attorney Nick Bostic, whom neither Plaintiff nor counsel for Plaintiff originally knew, agreed to be lead counsel in the trial of this matter.

Plaintiff has undoubtedly prevailed in this matter on the most significant issue in this case, proving that it was "deprived of its property without due process of law as a result of a conspiracy between Stewart and Hamre or between Stewart, Page and Hamre conspired with Judge Hamre."

10

The lack of a large punitive damage award does not diminish that success. As the Supreme Court has explained, civil rights plaintiffs "seek[] to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms." *City of Riverside v. Rivera,* 477 U.S. 561, 574-80, 106 S. Ct. 2686, 91 L.Ed. 2d 466 (1986).

Finally, Plaintiff anticipates that Defendant Stewart will attempt to argue that since Plaintiff ultimately prevailed on only one claim against one of the originally-named Defendants, Plaintiff's recovery should be limited. However, such reductions are inappropriate. As the Supreme Court in *Hensley v. Eckerhart,* 461 U.S. at 435 stated:

> [m]any civil rights cases will present only a single claim. In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead, the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.
> …
> In these circumstances the fee award should not be reduced because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing the fees. The result is what matters.

This language is particularly applicable to the present case—indeed, the Court has witnessed firsthand how the due process and malicious prosecution claims were so closely interwoven that it was nearly impossible to separate the facts of the two claims. This was a fiercely contested issue prior to and at trial, was the subject of a Motion in Limine, supplemental briefs and responses, and eventually an Order in Limine which carefully excluded only certain facts and exhibits related to the malicious prosecution claim while allowing others to be presented to the jury. This case is a perfect example of claims that are so interwoven that it would not only impracticable, but virtually impossible, to attribute the fees incurred to only one of the claims. The total attorney fee

11

award sought is $490,797.90, including expenses, but excluding interest. Plaintiff respectfully requests that this Court award that amount in full.

### III. Expenses Sought Under § 1988

The total amount sought by Plaintiff in this request for attorney fees under § 1988 also includes expenses which were incurred and paid by the Plaintiff throughout this litigation. (*See* Expenses attached hereto as **Exhibit G**). This Court has previously addressed awarding expenses under **§** 1988, stating:

> Section 1988 has been construed, as a general rule, to allow reimbursement for all reasonable out-of-pocket expenses incurred by prevailing counsel with normally are charged separately to fee-paying clients and which are not incorporated as part of office overhead into the attorneys' billing rates. *See Kuzma v. I.R.S.,* 851 F.2d 930, 933-34 (2d Cir. 1987) (1988 fees include recovery of photocopying, travel and telephone costs, as district from "nonrecoverable routine office overhead"); *Mennor v. Fort Hood National Bank,* 829 F.2d 553, 556-557 (5th Cir. 1987) (allowing recovery for postage, long-distance telephone calls and travel in Title VII case); *Laffey v. Northwest Airlines, Inc.,* 241 U.S. App. D.C. 11, 746 F.2d 4, 30 (D.C. Cir. 1984); *Henry v. Webermeier,* 738 F.2d 188, 192 (7th Cir. 1984); *Ramos v. Lamm,* 713 F.2d 546, 559 (10th Cir. 1983).

*Knop v. Johnson,* 712 F. Supp. 571, 588-589 (W.D. Mich. April 5, 1989). It should be noted that some of the expenses requested herein are duplicative of those requested in Plaintiff's Bill of Costs (specifically, deposition fees, witness attendance and mileage fees, witness service fees, fees for the electronic discovery consultant and some fees for photocopying). To the extent the Court awards these expenses under Plaintiff's Bill of Costs, the total amount sought herein should be reduced accordingly.

### IV. Plaintiff is Entitled to Prejudgment Interest

Finally, the Sixth Circuit has stated that "in an action based on federal question jurisdiction, the award of prejudgment interest is committed to the sound discretion of the trial court." *Young v. Langley,* 850 F.2d 19 (6th Cir. 1988); *see also Lentz v. City of Cleveland*, 334 F.

App'x 42, 51 (6th Cir. 2009) (citing *Anderson v. Whittaker Corp.*, 894 F.2d 804, 809 (6h Cir. 1990)). However, "[p]rejudgment interest should ordinarily be granted unless exceptional or unusual circumstances exist making the award of interest inequitable." *Laborers' Pension Trust Fund-Detroit and Vicinity v. Family Cement,* 677 F. Supp. 896, 898 (E.D. Mich. 1987). "Prejudgment interest is often a component of complete compensation and that in light of § 1983's remedial purpose, interest is often included in the damages award." *Wickham Contracting Co. v. Local Union No. 3,* 955 F.2d 831, 833-34 (2nd Cir. 1992). Further, courts have routinely held that interest is available on an award of attorney's fees under § 1988. *See Preston v. Thompson,* 565 F. Supp. 294, 297 (N.D. Ill. 1983) (stating "every reported case to address the issue has held that interest is available on an award of attorney's fees under § 1988.")

Plaintiff also seeks prejudgment interest on its costs and any award of attorney fees from the date Plaintiff filed the initial Complaint in this action on December 23, 2013 through the date of entry of judgment on the present Motion for fees. Plaintiff asks this Court to exercise its discretion and calculate prejudgment interest in accordance with MCL 600.6013. *See Kelmendi v. Detroit Bd. of Educ*, 2017 U.S. Dist. LEXIS 63652, *82 (E.D. Mich. 2017) (applying MCL 600.6013 to determine prejudgment interest)*; see also Pressey v. Patterson,* 898 F.2d 1018, 1026 (5th Cir. 1990) and *Winter v. Cerro Gordo County Conservation Bd.,* 925 F.2d 1069, 1073 (8th Cir. 1991) (both cases concluding that state law governs the calculation of prejudgment interest in § 1983 claims).

## **CONCLUSION**

WHEREFORE, for the reasons set forth herein and pursuant to Fed. R. Civ. P. 54(d)(2) and 42 U.S.C. § 1988(b), Plaintiff respectfully requests that the Court enter an Order awarding them attorney's fees and expenses, in the total amount of $490,797.90, plus interest from

December 23, 2013.


Dated:  May 10, 2018	      /s/ Brittany B. Dzuris_____
	Brittany B. Dzuris (P81438)
	Donald R. Visser (P27961)
	VISSER AND ASSOCIATES, PLLC
	J. Nicholas Bostic (P40653)
	BOSTIC & ASSOCIATES, PLLC
	*Counsel for Plaintiff*


## CERTIFICATE OF SERVICE

 I hereby certify that on May 10, 2018 the foregoing document was served on all parties of record via electronic mail.


	By:   /s/ Brittany B. Dzuris____.